Good morning. May it please the court. My name is Ray Sheets. I'm from Cedar Rapids, Iowa, and I represented Mr. Harry at the district court level. This morning I want to start with the 404B issue. The district court allowed 404B evidence under the exceptions of intent and knowledge. Now intent and knowledge, first of all, it's important to note that this evidence, 404B evidence, was not convictions. And I say that because every case cited by the government and the court dealt with convictions. This case was nothing charged, nothing tried, and nothing convicted. It was two cooperators or three cooperators coming in and providing testimony. Secondly, the important thing to note is that this is not a conspiracy case. This was simply charged as a possession with intent to deliver. And I note that because the case law from this circuit is clear that in conspiracy cases, intent and knowledge are almost always an issue. And in this case, the intent of the defendant, the knowledge of the defendant, was not an issue. The only issue dealt with possession. Who possessed it? Did the defendant possess it or did the other person, the owner of the truck who was sitting right next to the defendant, possess it? Well, counsel, couldn't it be that his mental state is at issue even if the issue is who possessed it when there's evidence that he has an intent to possess it and use it in distribution? Particularly when we have the facts in this case, he initially admitted it was his when the police made the stop. We do. And he talked about why he made that admission, and we have corroborating evidence of the reasons that he gave, such as the passenger's father who owned the truck came in and testified that the passenger's name was Mr. Toole. Mr. Toole had scoliosis of the spine and could not drive long distances. We have significant evidence showing that my client owned his own vehicle in which he could have driven. We have evidence that my client was a mechanic of motor vehicles and easily could have fixed any car. So there was significant evidence pointing to who possessed it. The issue of intent was never placed in issue, either by the defendant's testimony when he testified at trial. Wouldn't his knowledge be at issue if there was an intent to distribute? No, no. The only issue, and I cited the Eighth Circuit case, Eggleston, that discussed it was at page 26 of my brief that knowledge goes to if a defendant objects to the knowledge of the type of substances it is. And in that case, I believe it was Judge Richard Arnold. The judge indicated that if Eggleston's, the defendant's defense is that he thought the cocaine in that case was foot powder or some other substance, the fact that he had previously possessed cocaine, that goes to knowledge. But that Eggleston case, which is still good law, goes to, quote, the defendant's theory in Eggleston was, quote, simply that the cocaine belonged to Robinson and not to himself. And in that case, in Eggleston, the Eighth Circuit reversed that case and ordered a new trial where those prior bad acts evidence came in. And in this case, we would rely on that case, United States v. Eggleston, because it goes directly to the point that was issue, that was at issue in this case. The only issue was, again, who possessed it. There was no dispute. That was your theory of the case, and that certainly was an issue if it wasn't his, and he wouldn't be able to be charged. But that wasn't, I don't see how that makes it the only issue in the case. Well, I believe, Your Honor, that it was indeed the only issue. The evidence at trial was that. I mean, it would have been a winning issue had the jury believed that it wasn't his. But when you have a confession, in essence, of possession, of ownership, that would make a jury verdict very difficult or make it explainable as to why the jury would have not believed the defense. When the jury had significant other evidence in front of it, such as seven months after this incident, the same passenger, Mr. Toole, was stopped and found in possession of a significant quantity of methamphetamine in the same truck, that, I think, went to show that our defense had a basis. The thing that we were not allowed to get into was, and that's our third issue on the appeal, was the fact that this same passenger had several methamphetamine-related convictions that we were not allowed to introduce into evidence. That's your reverse 404B argument. That's correct. So in this case, we had the situation where the government was allowed to introduce evidence of uncharged, untried, unconvicted conduct into their case, but the court did not allow the defense to present tried and pled to methamphetamine-related conduct dealing with the passenger. Counsel, who bears the burden on establishing whether or not that individual was incarcerated for a certain number of years? I mean, as I read it, your initial argument was, look, he was sentenced to 10 years, end of story. And the government comes back and says, well, obviously he didn't serve 10 years because he was convicted two or three years later. So, I mean, who's got the burden on that particular issue? And if it falls on you, how did you meet that burden? Well, we would, in our reply brief, Your Honor, we clearly indicated that we believe that the government has that burden to show. Or, not the government, but when the proponent of such evidence, and we submitted all of the sentencing documents to the district court at the time, that clearly showed that Mr. Toole was sentenced to 10 years on the conspiracy to manufacture methamphetamine charge with an additional two years consecutive to additional possession of methamphetamine charges. Once that party submits that evidence, then it is up to the other party, whether sometimes it's the defendant or other times, in this case it was the government, that has the burden to show that that prison time was not properly included. We argued, and we do continue to argue, that if the district court had taken that into consideration, that these prior methamphetamine convictions would have clearly came in as reverse 404B evidence. So, in this case, yes, the proponent of the evidence made its initial, we made our initial showing, then it was up to the government to rebut that, which they never did. And in this case, it was particularly critical because we have, again, consistent with other types of evidence. Again, the fact that the same passenger, Mr. Toole, in his same vehicle, nine months after the incident in which Mr. Harry was arrested, was found in possession of, in that case, there was four grams of methamphetamine. Well, that's not a prior act, though, isn't it? I guess that would be something that occurred after the offense? Yes. Yes, it occurred nine months after the arrest in this case. Now, the district judge, you offered various things for 404B, and the district court admitted some and excluded some. Yes, it admitted some evidence regarding the same passenger. There was evidence about him being, in 2016, law enforcement interviewed him in regards to his activity around another methamphetamine manufacturing site. We presented a witness in regards to that. So there was significant evidence concerning the culpability of Mr. Toole. My point is the district court didn't just wholesale exclude the evidence you sought to introduce. It examined it and found some relevant and admissible and others too remote or some other places for exclusion. From a defense perspective, I think it would have been certainly more probative and more convincing to have those convictions in which that same person was convicted for felony methamphetamine-related conduct. I'm going to reserve the balance of my time. Thank you, Mr. Chiefs. Thank you. Mr. Reinert. May it please the court, counsel. I'm Patrick Reinert. I'm an assistant U.S. attorney from Cedar Rapids, Iowa. I handled the Harry case from sentencing on another AUSA. I actually handled the trial and the suppression issue in the matter. I'll start, I think, where Mr. Sheets left off with the 404B. Defendant was charged with a possession with intent to distribute. When a charge is made and you have to go in front of a jury, the government has to put evidence on all of the elements of that offense. Whether the defendant says, well, if they don't stipulate to an element, it's got to be proven by legal and competent evidence. So intent and knowledge are clearly in play in a possession with intent because knowledge goes not only to the knowledge of the substance but a knowledge to the possession because you have to knowingly possess the substance with the intent to distribute. So that knowledge and intent was limited. The 404B evidence was offered for that limited purpose. And there's, of course, no requirement under 404B that the offense be convicted or taken to trial. Any kind of evidence is available under 404B of the Federal Rules of Evidence so long as it passes muster under 404B and then 403 and the balance. Yes, sir. Again, what did this prior history add to his possession of the drugs in this case? Well, the prior testimony of the witnesses that testified about drug transactions with the defendant, either purchasing methamphetamine from him, selling methamphetamine to him, the substance involved in this case was methamphetamine and the quantities that they were involved with were also similar intent to distribute level quantities, larger quantities of methamphetamine. Why isn't that classic propensity? He did it before so he's going to do it again. Well, it really was narrowly tailored and as the court, you know, the district court did a very detailed order looking at the government's 404B as well as the reverse 404B. I think there are actually two orders dealing with that and it wasn't argued for propensity. It was argued purely for intent and knowledge and I don't think there's any argument that it was argued for propensity. It was argued for the limited purposes of 404B, the defendant's intent as to what was going to happen with that methamphetamine that he, at least initially at the roadside, admitted he had but denied it at trial or the knowledge that this was, that he knowingly possessed it in the back of the truck and that it was methamphetamine. So it really went to just those two narrow issues, you know, possession of intent. He possessed it because he had knowingly possessed drugs on earlier occasions or was it introduced to establish that he had, at what point did he tell the untruths about possession? The initial roadside stop, he admitted that he possessed it and then later at trial is when he denied possessing it and said it was Mr. Toole that was involved in the drug trafficking. So that really was the defense theory of the case going in. So putting in that 404B evidence to look at what was the defendant's intent and knowledge was relevant. Even if the defendant admitted possessing it, what was his intent on what he was going to do with it? Was he going to be just a drug user or was he intending to distribute it to others? So it became really relevant, you know, that was... Impeachment testimony or propensity testimony or what? It was, the 404B evidence was offered in the government's case in chief prior to the defendant testifying. So it was, it was offered as... You might say it was anticipatory rebuttal maybe. It was offered to prove up elements of the offense. The knowing possession as well as the intent to distribute that quantity of methamphetamine. Those are elements of the offense that need to be proven. So the government's testimony established the fact, if it was a fact, that he had made contradictory statements regarding possession? The government's testimony talked about the roadside interview that indicated that he admitted he had possessed that and said it was his. And then later during the course of the trial, when the defendant testified, he of course said it was Mr. Toole's. So the bulk, the full world of evidence included both the earlier admission and the later testimony that was not the defendant's. Does it matter that this testimony wasn't of a conviction or... Does that have any bearing on the admission of it? It does not. Under 404B it says any kind of evidence... 404B isn't limited to offenses that have been admitted in court or convicted in court. It really is any evidence that you can prove by a preponderance occurred. And the court, the district court then is in the position of looking at all the evidence, determining whether the government can prove it or the defendant, the proponent I should say, can prove that the offense occurred or the conduct occurred and then goes through the 404B as it offered for the correct limited intent. You know, because you can't do a laundry list under 404B. It's got to be specific. And then do the 403 balance after that. And in this case, the district court did all of that. And we would, the United States would suggest there is no abuse of discretion in the admission of the 404B in this case or the admission of the... or the refusal to admit all of the reverse 404B because the same analysis applies to 404B evidence under... no matter who offers it, whether it's the government or the defense. What was the district court's rationale for excluding the 404B evidence offered by the defense against Mr. Thule? When... I have to get my readers out at some point or learn to write bigger. The court allowed the 2006, which was a relatively recent possession with intent, a possession of drug paraphernalia in 2005 and the 2017 traffic stop where meth was involved. It did not allow the older. There was an OWI conviction in 2003. That did not come in. Conspiracy to manufacture meth in 2000. And as the court knows, under 404B, you look at, you know, the age of the conviction certainly is... So was remoteness the rationale? Say again? Was remoteness the rationale then because it was... I believe at least on the events that occurred in 2000, I believe remoteness was a primary consideration for the court. But, of course, that's one of a number of factors under 404B that the court discussed in the court's well-reasoned and detailed findings. And, of course, to get a reversal or to get a new trial on this, the court has to find that the error would be not harmless error. And looking at the evidence in this case, we would suggest that if there was any error, and we suggest there was not, it would be harmless beyond a reasonable doubt. I would like to talk a little bit about the stop in this case because the United States suggests the court does not need to even reach a Rodriguez analysis or attempt to come up with a new Rodriguez discussion as to attenuation or extension of the traffic stop in this matter. First, in the reply brief, defendant correctly points out that when I wrote my brief, I shorthanded what the CI said and what the totality of the circumstances were on the stop. That's my fault. I shorthanded it and should not have. A more detailed discussion, the summary of the evidence that the officers had is at page 50 in the suppression transcript. That's the August 3, 2017 transcript. The detailed discussion of all of the text messages, as well as the background investigation and everything else they had, is basically pages 63 through 79. But in essence, what you had was the CI came forward early on in jail, talked to the officers. Talked to the officers when he got out of jail, so they have that discussion. Had a series of text messages on the day of the stop, and the officers had done other investigation as well into Mr. Harry and identified Mr. Harry as a large-scale methamphetamine dealer with a source of supply either in Des Moines or Marshalltown, which is about a four-hour drive from Dubuque. So the investigators, Investigator Williams, really had a laminated total of investigative activity that they had done, the discussion they had had with the CI, things they were able to corroborate, as well as the text message tips. Counsel, if we get to the Rodriguez issue, what does the record show about the delay, if any? It's not clear to me. My recollection is the magistrate judge suggested there was an over two-minute delay. The district court found otherwise. It's not clear to me what the government's position is on whether there was a delay, and if so, how long the delay may have been. I re-read all the transcripts in preparation for this, and actually if you look at page 55 of the transcript of the August 3rd hearing, the United States would suggest there was no delay, because in the testimony of Deputy Carney pulled the car over. Williams was there at the same time as Carney pulled it over. So they arrived simultaneously. And Williams says, I stopped alongside the road with the traffic stop. Another investigator stopped with us. I approached the vehicle. I did identify Scott Harry and Dennis Tool in the vehicle. I then assisted Deputy Carney with the traffic stop, as far as processing the vehicle registration, driver's license status, wants and warrants, while Deputy Carney was deploying the canine on the vehicle. So what you have is Carney starts to stop. Williams is there. Williams then picks up that, you know, seamlessly picks up that traffic stop part of it and is continuing to process the ticket while the dog is deployed. So there was no delay. The district court got it right then. Absolutely. So there was absolutely no delay at all, other than, you know, assuming for sake of discussion, the only delay could potentially be one officer talking to another saying, hey, I'll handle the traffic stop in a matter of a second or two. And I think courts expect officers to work in teams to coordinate and talk to one another. So that kind of delay, you know, the government, the defendant, suggests that we're trying to resurrect some kind of de minimis delay, and we are certainly not. But courts, the courts of appeals have come out with different language attempting to come up with a formulaic approach to Rodriguez to give police officers guidance. In a couple of cases that are kind of a luster of the different approaches the courts have taken, U.S. v. Green, which is out of the Third Circuit, 897 F. 3rd 173 discusses different language used by different circuits to discuss Rodriguez. And most recently, the 11th Circuit in Campbell, which is 912 F. 3rd 1340, they established an approach that says, if to unlawfully prolong a stop, the stop, the officer must conduct an unrelated inquiry aimed at investigating other crimes that adds time without reasonable suspicion. So it's kind of a multilayered approach as an application of Rodriguez. So, Counselor, do I understand you to say that you believe you have an alternative rather than even considering the stop, that basically this vehicle is going to be stopped anyway based on the C.I. information? Absolutely. The United States would suggest, based upon the evidence that the officers had, you know, they had him transporting methamphetamine. The officers knew it was a large quantity of methamphetamine based upon their own investigation. It was about four hours away from Dubuque, generally in the Marshalltown or Des Moines area. That 151 was really the route that would bring them there, although they had all the highways covered. Traveling with a passenger white truck, you know, it was a white single cab truck registered with Dale Tool. All of that was enough to give them reasonable suspicion to conduct a Terry stop without any traffic violation at all. And when you look at that Terry stop, you're allowed to have the Terry stop to be the duration necessary to investigate why you stopped them. So at that point, the time and whether there was a traffic ticket being processed or not is irrelevant. So the Terry stop in and of itself authorizes the stop of the car. But then if you do have to go to the traffic violation, the probable cause stop, there was no delay in that. So the court need not reach the Rodriguez issue or really formulate a new Rodriguez analysis in this particular case. Subject to questions, I've got about a minute left if there are any questions. I don't see any. Thank you, Mr. Reiner. Mr. Sheets, your rebuttal. Thank you, Your Honor. I want to respond to a couple of things. The court asked Mr. Reiner, what was the reason for the district court in excluding the reverse 404B evidence? And in the district court's order excluding it, the district court made clear that the only reason was the remoteness in time. The district court, and it's part of the addendum to my brief, on page six of the district court order, the court found that the convictions of the passenger, Mr. Toole, were relevant to material issues. All of his activities involved the presence, possession of methamphetamine or drug paraphernalia related to methamphetamine. The court found that they were relevant. The court found that these acts were similar in kind to the instant acts with regard to the third factor. I find, quote, there is sufficient evidence for a jury to conclude that Toole committed these acts by preponderance of the evidence. And fourth, the court found that the probative value was greater than any prejudicial effect because the court noted that Harry's theory of defense was a mere presence defense. So the only reason that the district court did not allow these convictions to come in was the remoteness in time. And again, when the court... And the time frame was what, about 13 years or so? The convictions were from 2000 and 2003. The conduct of the instant case occurred in February 2017. So there was 14 years and 17 years. In the courts, it kind of 13 was the... the main rule that 13 years and less is coming in. And unless there is prison time involved, which in this case there clearly was, then even convictions over 13 years old comes in. And they didn't in this case because the district court never made that analysis and the government never made that argument. They just simply said, well, the convictions are too old. Now, another point that I would ask to respond to was the intent. The government says, well, intent was something that we had to prove, and so we can show intent by presenting this uncorroborated testimony of these informants. Before one gets to intent, there has to be possession. And in this case, possession was always... And the defense made that clear in its motion limine. So this was no surprise to the government. There was no surprise to them at all what our case was going to be. And it's reflected in our motion limine. We made it clear that possession was the issue. Who possessed it? With all of the evidence that we had that Mr. Toole possessed it, that was the fighting issue in the case. Counsel, the government still had to prove intent. Wouldn't you agree? I mean, if they hadn't submitted sufficient evidence, I think a defense lawyer in closing would have gotten up and argued in the alternative that, look, here's my main defense, but the government has the burden beyond a reasonable doubt, and they didn't address intent to distribute. Well, the intent was never addressed by the defense because we knew it wasn't. Pure and simple, I didn't possess defense. Yes. Your argument is that no matter how carefully the district court phrased its order, it almost requires a willing suspension of disbelief for us to say that the jury could have so closely followed the instruction that it didn't take its prior possession cases into account in determining whether he possessed it in this case. Well, in regards to the district court's order, Your Honor, I would reference you to page five of the court's order. It gave very short time to . . . In fact, it didn't give any analysis at all in terms of the exceptions of intent and knowledge,  or it simply stated that in drug cases where the government says it's proving intent and knowledge, it's coming in, this 404B stuff is coming in. And we have case law that now says that there needs to be more than just a recitation. And in this specific case where we have such significant evidence of the other person's possession, possible possession, I think it was unfair for the defendants . . . Differently, the district court's instruction, no matter how carefully phrased, eviscerated your defense of no possession. I'm not understanding . . . In other words, when I said eviscerated, in other words, once the jury heard that instruction, any testimony by your client was rendered almost irrelevant to their discussion. That's even more confusing than my original position. So just disregard for what I said or attempted to say. Well, we're not talking about a quantity of drugs. No, no, we're just talking about possession. Yes, possession was the only issue in this trial. The linchpin of your defense, and according to your argument, I guess, that was undercut or eviscerated or destroyed by the district court's 404B order, no matter how carefully worded it may have been? Well, it was unfair for the government to be able to present this kind of evidence. And at the same time, the district court was not allowing the defense to introduce evidence that the court found was relevant, but it was too old. Thank you, Mr. Sheets. Thank you also, Mr. Reinert. The court appreciates both counsel's presence and the argument which you've presented to the court. We will take the case under advisement. You may be excused. Madam Clerk, would you call Case No. 2 for the morning? The next case to be heard is 18-17-51, U.S. v. George Castro Guerrera. Thank you.